# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANGEL KEITH TOSCANO, JR., et al., | Case No. 1:13-cv-01987-SAB |
| Plaintiffs, | ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT |
| v. | |
| CITY OF FRESNO, et al., | (ECF Nos. 45, 46, 47, 50) |
| Defendants. | |

Currently before the Court is Defendants' partial motion for summary judgment filed June 1, 2015. (ECF No. 45.)

Oral argument on Defendants' motion for summary judgment was heard on July 22, 2015. Counsel Ryan Nelson appeared for Plaintiffs Angel Keith Toscano, Jr., Cole Toscano, and Steven Wade Toscano; counsel Andrew Butler Jones appeared for Plaintiffs Anthony Keith Toscano, Julian Matthew Toscano, Angel Infinity Toscano, and Jimmy Lee Long; and counsel Bruce Daniel Praet appeared for Defendants City of Fresno and Lyon. (Id.) Having considered the moving, opposition and reply papers, the declarations and exhibits attached thereto, arguments presented at the July 22, 2012 hearing, as well as the Court's file, the Court issues the following order.

## I.

## BACKGROUND

On August 23, 2013, at approximately 7:30 p.m., decedent Angel Keith Toscano and his friend were riding bicycles in the vicinity of Princeton and Glenn Avenues in the City of Fresno.

1

1 Officers James Lyon and Kenneth Webb attempted to conduct a traffic stop. While his friend
2 stopped, the decedent rode away and Officer Lyon gave chase. During the chase, the decedent
3 was run over by Officer Lyon's patrol vehicle. Plaintiffs, as successors-in-interest, filed this
4 action on December 4, 2013. (ECF No. 1.) The operative complaint in this action is the first
5 amended complaint, filed May 9, 2014 against Defendants City of Fresno, Chief Jerry Dyer,
6 Officer James Lyon, and Officer Kenneth Webb alleging violations of the Fourth and Fourteenth
7 Amendments and state law claims. (ECF No. 19.)

8 On June 1, 2015, Defendants filed a motion for partial summary judgment on the Fourth
9 and Fourteenth Amendment claims. (ECF No. 45.) Plaintiff filed an opposition on July 8, 2015.
10 (ECF No. 46.) Defendants filed a reply on July 13, 2015. (ECF No. 50.) On July 15, 2015,
11 Defendants Jerry Dyer and Kenneth Webb and the Monell claims were dismissed from this
12 action based upon the stipulation of the parties. (ECF Nos. 51, 52.)

13 **II.**

14 **SUMMARY JUDGMENT LEGAL STANDARD**

15 Under Federal Rule of Civil Procedure 56, "[a] party may move for summary judgment ...
16 if the movant shows that there is no genuine dispute as to any material fact and the movant is
17 entitled to judgment as a matter of law." Summary judgment must be entered "against a party
18 who fails to make a showing sufficient to establish the existence of an element essential to that
19 party's case..." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). "[A] party seeking summary
20 judgment always bears the initial responsibility of informing the district court of the basis for its
21 motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories,
22 and admissions on file, together with the affidavits, if any,' which it believes demonstrate the
23 absence of a genuine issue of material fact." Id.

24 If the moving party meets its initial responsibility, the burden then shifts to the opposing
25 party to establish that a genuine issue as to any material fact actually does exist. Matsushita
26 Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In attempting to establish the
27 existence of this factual dispute, the opposing party may not rely upon the denials of its
28 pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or

admissible discovery material, in support of its contention that the dispute exists.  Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 586 n.11.

### III.

### UNDISPUTED FACTS

1. On August 23, 2013, at about 7:30 p.m., Officers Lyon and Webb attempted to detain decedent and another subject for observed traffic infractions.

2. Decedent elected to flee on his bicycle from Officer Lyon.

3. Officer Lyon initially chased the decedent for the minor traffic violations of riding a bicycle on the wrong side of the road and failing to stop at a stop sign.

4. Officer Lyon chased the decedent up and down Glenn Avenue and then down an alley for a total of approximately 1,200 feet.

5. While traveling on Glenn Avenue before entering the alley, the patrol car operated by Officer Lyon achieved a speed of 43 mph.

6. Witness Galvan's impression was that the patrol car went 45 mph down Glenn Avenue during this chase.  She remembers thinking "wow, he's speeding."

7. The patrol car fishtailed into the alley still going a little fast; there was a really loud revving sound as the patrol car went down the alley.

8. Considering the distance of the chase, the investigating officer, Detective Brian Hance, was of the opinion that even he would have been tired riding a bicycle that distance.

9. During the chase, Officer Lyon forgot to activate his lights and siren.

10. Officer Lyon testified that he nearly always chases cyclists without use of lights or siren.

11. The total chase took between one minute and one and one-half minutes.

12. As the decedent fled up an alley, Officer Lyon entered the alley at an estimated speed of 15 mph.

13. As the decedent was fleeing on his bicycle down the narrow alley, he was struck by Officer Lyon's patrol vehicle.

14. Officer Lyon admits exceeding the speed limit in the alley as he pursued the

1. decedent.

2. 15. Before striking the decedent, Officer Lyon witnessed that the decedent's right foot kept slipping off the pedal and that he was holding one hand against his chest.

3. 16. Decedent died almost instantly after being accidentally run over.

4. 17. As this pursuit ensued, Officer Lyon realized his vehicle posed a danger to the decedent.

5. 18. On the date of the accident, the patrol vehicle functioned properly. Officer Lyon was responsible for the speed and movement of the vehicle.

6. 19. As Officer Lyon chased the decedent in the alley, he admits to getting within five feet of the decedent.

7. 20. The investigating officer, Detective Brian Hance, found no evidence of any braking before impact.

8. 21. Officer Lyon never exceeded 21 mph while following decedent in the alley.

9. 22. Officer Lyon's maximum speed just prior to impact did not exceed 19 mph.

10. 23. Officer Lyon admits that he has been taught that it violates departmental procedure to bump a bicycle to the ground; you cannot use a PIT maneuver on a bicycle.

11. 24. Officer Lyon admits that it would constitute a use of deadly force to strike someone intentionally with a vehicle.

12. 25. Detective Hance is aware of another situation where a Fresno police officer struck an upright bicycle during a chase.

13. 26. The Fresno Police Department vehicle pursuit policy includes a duty to keep a safe gap in case a suspect stops suddenly.

14. 27. It violates departmental policy and California Vehicle Code section 22350 to negligently run over a cyclist.

15. 28. Officer Lyon had received extensive training on the operation of his patrol car, including how to avoid skidding on dirt surfaces, differing stopping distances, etc.

16. 29. The investigating officer concluded that Officer Lyon was the primary collision factor for this accident.

1   30. Both his supervisors and the California Highway Patrol agreed with Detective
2 Brian Hance's assessment that Officer Lyon was the primary collision factor of the accident.

3   31. Detective Brian Hance turned the matter over to the District Attorney's Office for
4 possible prosecution for vehicular manslaughter.

**IV.**

**ANALYSIS**

Defendants contend that an accidental death during a police pursuit cannot give rise to constitutional claims. Plaintiffs argue that an unlawful seizure occurred here because Defendant Lyon intentionally bumped the decedent's bicycle; and Defendants are therefore not entitled to summary judgment. Defendants counter that the only disputed fact offered by Plaintiffs is immaterial to resolution of this action.

**A.   Fourth Amendment**

"The Fourth Amendment provides that 'the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated * * *.' " Terry v. Ohio, 392 U.S. 1, 8 (1968). The Constitution does not forbid all searches and seizures, but unreasonable searches and seizures. Terry, 392 U.S. at 9. It is undisputed that the decedent did not yield to authority, but was attempting to flee from Defendant Lyon. For the Fourth Amendment analysis, the question here is whether a seizure occurred during the pursuit.

The Supreme Court considered whether a seizure occurred when the suspect does not yield to the show of authority in California v. Hodari D., 499 U.S. 621, 626 (1991). The Court held that where a suspect continues to flee after the show of authority no seizure has occurred. Id. A seizure requires either physical force or where such force is absent, submission to the assertion of authority. Id. Further, it is well established that a no Fourth Amendment violation occurs where a pursuing police car seeks to stop a fleeing motorist and accidently stops the suspect by crashing into him. County of Sacramento v. Lewis ("Lewis"), 523 U.S. 833, 844 (1998).

In Brower v. County of Inyo, 489 U.S. 593 (1989), a suspect lead police on a twenty mile

5

1  chase attempting to elude capture. 489 U.S. at 594. The suspect was killed when he crashed into
2  an unlit police roadblock. Id. The roadblock was set up across the two lanes of traffic and
3  placed behind a curve to stop the suspect. A police car had been positioned with its headlights
4  on between the decedent and the roadblock so that he was blinded on his approach of the
5  roadblock. Id. A suit was brought alleging that the officers used excessive force in violation of
6  the Fourth Amendment. Id. Under the Fourth Amendment, a seizure occurs where there is an
7  intentional acquisition of physical control. Id. at 596. The Brower court found that when the
8  suspect was stopped by the roadblock that was intended for that purpose, it was enough for a
9  seizure to have occurred. Id. Where a governmental termination of freedom of movement
10 occurs through means intentionally applied a seizure has occurred. Id. at 596-97.

11         Defendants argue that this action is exactly like Lewis. In Lewis, during a high speed
12 pursuit of a motorcycle, the motorcycle tipped over in front of the officer. 523 U.S. at 833. The
13 officer slammed on his brakes and skidded into the passenger on the motorcycle causing massive
14 head injuries and death. Id. Here, the parties dispute whether the decedent fell over in front of
15 Defendant Lyon's patrol vehicle or if Defendant Lyon intentionally bumped the decedent's
16 bicycle while he was upright. If the evidence viewed in the light most favorable to Plaintiffs
17 could support a finding of excessive force, then Defendants are not entitled to summary
18 judgment. Smith v. City of Hemet, 394 F.3d 689, 701 (9th Cir. 2005). The Ninth Circuit has
19 held that because the excessive force inquiry requires the jury to sift through disputed factual
20 contentions and draw inferences therefrom, summary judgment should be granted sparingly in
21 excessive force cases. Smith, 394 F.3d at 701.

22         Defendant Lyon contends that the decedent fell in front of his patrol vehicle and he was
23 unable to stop, accidently running over the decedent. In support of his motion for summary
24 judgment, Defendant Lyon submits the deposition of Detective Brian Eric Hance. Detective
25 Hance testified that he reconstructed the accident scene and determined that the decedent's
26 bicycle was going down as the police car was approaching because the rider was crashing or
27 intentionally laying it down. (ECF No. 45-5 at 19:5-21, 22:8-17.) If the evidence were to
28 establish that the decedent was accidently run over by Defendant Lyon because his bicycle fell in

1 front of the patrol car or the decedent was laying it down, there would be no seizure under the
2 Fourth Amendment.

3 Defendants contend since Defendant Lyon testified that he did not intend to bump the
4 decedent with his vehicle and there is no evidence that Defendant Lyon intended to strike the
5 decedent with his bike summary judgment is appropriate. Where the officer is the only surviving
6 witness to the incident, the court must carefully examine the evidence in the record, such as the
7 contemporaneous statements of the officer and the available physical evidence as well as the
8 expert testimony proffered by the plaintiff to determine whether the officer's story is internally
9 consistent and consistent with other known facts. Scott v. Henrich, 39 F.3d 912, 915 (9th Cir.
10 1994). The court may not simply accept what may be a self-serving account by the officer. Id.

11 Plaintiffs contend that Defendant Lyon intentionally bumped the bicycle and provide an
12 expert report opining that the bicycle was upright at approximately 90 degrees when it was
13 bumped by the patrol vehicle. (ECF No. 46-4 at 17.) Defendants argue that it is irrelevant if the
14 bicycle was at 60 degrees or 90 degrees when it was struck because there is no evidence that
15 Defendant Lyon intentionally struck the decedent's bicycle. However, if the bicycle was at 90
16 degrees when struck, coupled with the evidence that Defendant Lyon did not apply the brakes,
17 that would be sufficient for a reasonable juror to question Defendant Lyon's testimony that the
18 bicycle was falling over and he accidently struck it with his vehicle. See Scott, 39 F.3d at 915
19 (The Court "must also look at the circumstantial evidence that, if believed, would tend to
20 discredit the police officer's story, and consider whether this evidence could convince a rational
21 factfinder that the officer acted unreasonably.") If the trier of fact determined that Defendant
22 Lyon intentionally bumped the decedent's bicycle, then pursuant to Brower, a seizure would
23 have occurred. The disputed issue of whether the decedent was struck by the patrol vehicle
24 when it accidently fell over or if Defendant Lyon intentionally bumped the bicycle is for the trier
25 of fact to decide.

26 Plaintiffs have met their burden of establishing that a triable issue of material fact exists
27 as to whether Defendant Lyon intentionally bumped the decedent's bicycle thereby seizing him
28 under the Fourth Amendment. Accordingly, Defendants' motion for summary judgment on the

Fourth Amendment claim is denied.

## B. Fourteenth Amendment

Plaintiffs contend that Defendants' conduct violated their liberty interest in companionship and support of their father and guardian. (ECF No. 19 at ¶ 31.) The Ninth Circuit recognizes that a parent has a constitutionally protected liberty interest under the Fourteenth Amendment in the companionship and society of his or her child. Hernandez v. United States, 62 F. Supp. 3d 1169, 1184 (S.D. Cal. 2014) (quoting Curnow v. Ridgecrest Police, 952 F.2d 321, 325 (9th Cir.1991)).

The Supreme Court has held that:

> all claims that law enforcement officers have used excessive force—deadly or not—in the course of an arrest, investigatory stop, or other "seizure" of a free citizen should be analyzed under the Fourth Amendment and its "reasonableness" standard, rather than under a "substantive due process" approach. Because the Fourth Amendment provides an explicit textual source of constitutional protection against this sort of physically intrusive governmental conduct, that Amendment, not the more generalized notion of "substantive due process," must be the guide for analyzing these claims.

Graham v. Connor, 490 U.S. 386, 395 (1989). However, if no Fourth Amendment seizure took place, then Plaintiffs' claims would be considered under the Fourteenth Amendment.

"To challenge an executive action on substantive due process grounds. . ., a plaintiff must show that the defendant's conduct was 'so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience.' " Hammel v. Tri-Cnty. Metro. Transp. Dist. of Oregon, 955 F. Supp. 2d 1205, 1210 (D. Or. 2013), appeal dismissed (Oct. 16, 2013), appeal dismissed (Jan. 23, 2014), appeal dismissed (Jan. 23, 2014). Conduct that is "intended to injure in some way unjustifiable by any government interest is the sort of official action most likely to rise to the conscience-shocking level." Lewis, 523 U.S. at 849. In the context of due process claims, the standard to be applied depends upon the context of the situation confronted by the officer. Porter v. Osborn, 546 F.3d 1131, 1137 (9th Cir. 2008).

Where actual deliberation is practical, then deliberate indifference by the officer may suffice to shock the conscience. Wilkinson v. Torres, 610 F.3d 546, 554 (9th Cir. 2010). This standard will apply when the time frame involved makes it practical for the officer to actually

deliberate before acting. Porter, 546 F.3d at 1137. However, where officers are confronted with an evolving situation that takes place over a short period of time necessitating fast actions and competing obligations, due process is violated by an intent to harm. Id. at 1139.

In Bingue v. Prunchak, 512 F.3d 1169 (2008), the Ninth Circuit held that "police officers involved in all high-speed chases are entitled to qualified immunity under 42 U.S.C. § 1983 unless the plaintiff can prove that the officer acted with a deliberate intent to harm." Bingue, 512 F.3d at 1170-71. The court in Bingue rejected the argument that a deliberate indifference standard should apply and held that the intent to harm standard applies to all emergency and non-emergency high speed chases. Id. at 1177. Further, the Ninth Circuit has held that the purpose to harm standard applies even where the officer creates the very emergency that results in the deadly force. Porter, 546 F.3d at 1139-40.

Here, Defendant Lyon was engaged in an active pursuit of the decedent. Although the decedent was on a bicycle, the chase itself lasted approximately one and one half minutes (U.F. 11); and the officer was travelling between 15 and 43 miles per hour (U.F. 5, 12, 21, 22). "A police officer deciding whether to give chase must balance on one hand the need to stop a suspect and show that flight from the law is no way to freedom, and, on the other, the high-speed threat to all those within stopping range, be they suspects, their passengers, other drivers, or bystanders." Lewis, 523 U.S. at 853. Although Plaintiff contends that Defendant Lyon had time to deliberate, given the short length of time involved, the speed of the chase, and the evasive actions taken by the decedent, the Court finds that this is not a situation in which Defendant Lyon had time to stop and deliberate. See Porter, 546 F.3d at 1139-40 (rejecting the deliberate indifference standard even where officer could have deliberated while pursuing the subject). The purpose to harm standard applies to the Fourteenth Amendment claims raised herein.[1] See Moreland v. Las Vegas Metropolitan Police Dept., 159 F.3d 365, 373 (9th Cir. 1998) (purpose to harm standard applies to substantive due process rights to familial association claim in accidental police shooting).

---

[1] At the July 22, 2015 hearing, the parties agreed that the intent to harm standard was to be applied in this action.

The disputed fact of whether Defendant Lyon intentionally bumped the decedent's bicycle or accidently ran over the decedent when he fell in front of the patrol vehicle precludes summary adjudication of the Fourteenth Amendment claim. A triable issue of fact exists as to whether this was an accident or whether Defendant Lyon had an intent to harm the decedent by intentionally striking his bicycle with the patrol vehicle. Accordingly, Defendants' motion for summary judgment on the Fourteenth Amendment claims is denied.

### C. Qualified Immunity

Defendant Lyon also contends that he is entitled to qualified immunity. The doctrine of qualified immunity protects government officials from civil liability where "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Pearson v. Callahan, 555 U.S. 223, 231 (2009) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). To determine if an official is entitled to qualified immunity the court uses a two part inquiry. Saucier v. Katz, 533 U.S. 194, 200 (2001). The court determines if the facts as alleged state a violation of a constitutional right and if the right is clearly established so that a reasonable official would have known that his conduct was unlawful. Saucier, 533 U.S. at 200.

The district court is "permitted to exercise [its] sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." Pearson, 555 U.S. at 236. The inquiry as to whether the right was clearly established is "solely a question of law for the judge." Dunn v. Castro, 621 F.3d 1196, 1199 (9th Cir. 2010) (quoting Tortu v. Las Vegas Metro. Police Dep't. 556 F.3d 1075, 1085 (9th Cir. 2009)). In deciding whether officials are entitled to qualified immunity, the court is to view the evidence in the light most favorable to the plaintiff and resolve all material disputes in the favor of the plaintiff. Martinez v. Stanford, 323 F.3d 1178, 1184 (9th Cir. 2003).

As discussed above, there are material issues of fact that exist to preclude a finding on summary adjudication that Defendant Lyon did not violate the decedent's civil rights. A reasonable trier of fact could find that Defendant Lyon violated the Fourth Amendment if he

attempted to stop the decedent by bumping the bicycle with his patrol vehicle. Additionally, it is clearly established that "[w]here the suspect poses no immediate threat to the officer and no threat to others, the harm resulting from failing to apprehend him does not justify the use of deadly force to do so." Tennessee v. Garner, 471 U.S. 1, 11 (1985). In this instance, the decedent was on a bicycle and there are no facts to show that he posed a threat to the officer or others in his attempts to avoid detention. It would be clearly established that Defendant Lyon would violate the decedent's rights by using deadly force in the circumstances presented here. Accordingly, Defendant Lyon's motion for summary judgment on the ground that he is entitled to qualified immunity is denied.

### D.    City of Fresno and Police Chief Jerry Dyer

Defendants contend that since there is no Monell[2] claim against the City of Fresno the City of Fresno should be dismissed from this action. Plaintiffs concede that there is no Monell claim against the City of Fresno, but assert that the City of Fresno and Officer Lyon are still defendants on both the state and federal claims.

Section 1983 provides a cause of action for the violation of a plaintiff's constitutional or other federal rights by persons acting under color of state law. Nurre v. Whitehead, 580 F.3d 1087, 1092 (9th Cir 2009); Long v. County of Los Angeles, 442 F.3d 1178, 1185 (9th Cir. 2006); Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002). There is no respondeat superior liability under section 1983, and therefore, each defendant is only liable for his or her own misconduct. Ashcroft v. Iqbal, 556 U.S. 662, 677 (2009). Further, a local government unit may not be held responsible for the acts of its employees under a respondeat superior theory of liability. Monell v. Department of Social Services, 436 U.S. 658, 691 (1978). Rather, a local government unit may only be held liable if it inflicts the injury complained of through a policy or custom. Waggy v. Spokane County Washington, 594 F.3d 707, 713 (9th Cir. 2010).

In their oppositions to the motion for summary judgment, all Plaintiffs concede that they

---

[2] A local government unit may not be held responsible for the acts of its employees under a respondeat superior theory of liability. Monell v. Department of Social Services, 436 U.S. 658, 691 (1978). "Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." Monell, 436 U.S. at 694.

do not have a custom or policy claim against the City of Fresno and have presented no evidence to support such a claim. Absent a claim based on a custom or policy, the City of Fresno is entitled to summary judgment on the claims arising from the Fourth and Fourteenth Amendments. The City of Fresno's motion for summary judgment on the section 1983 claims is granted.

## III.

## CONCLUSION AND ORDER

Based on the foregoing, IT IS HEREBY ORDERED that:

1. Defendants' motion for summary judgment is GRANTED IN PART AND DENIED IN PART as follows:

    a. Defendants' motion for summary judgment on Plaintiffs' Fourth and Fourteenth Amendment claims against the City of Fresno is GRANTED;

    b. Defendants' motion for summary judgment on Plaintiffs' Fourth and Fourteenth Amendment claims against Defendant Lyon is DENIED; and

2. This action is proceeding against Defendant Lyon on Plaintiff's claims arising under the Fourth and Fourteenth Amendments; and against Defendants Lyon and the City of Fresno on the state law claims.

IT IS SO ORDERED.

Dated: **July 24, 2015**

UNITED STATES MAGISTRATE JUDGE